IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session

## DAVID WEATHERSPOON v. GAYLE MINARD, M.D.

**Appeal from the Circuit Court for Shelby County**
**No. CT00003509     James F. Russell, Judge**

_____

**No. W2015-01099-COA-R3-CV – Filed December 14, 2015**
_____

Plaintiff filed this health care liability action against the defendant doctor in 2000 and voluntarily non-suited it in 2008. Plaintiff re-filed the action in 2009. The defendant moved to exclude the plaintiff's standard-of-care expert for his failure to produce certain financial documents. The trial court granted the motion and excluded the expert five days before the scheduled trial date. Plaintiff requested leave to employ another standard-of-care expert in the five days before trial, which the trial court denied. The trial court ultimately dismissed the plaintiff's entire case because, without a standard-of-care expert, he was unable to state a health care liability claim. Plaintiff appealed, arguing that the trial court abused its discretion when it did not permit him to "emergently arrange" for an expert in the five days preceding the scheduled trial date. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, J J., joined.

Aaron L. Thomas, Memphis, Tennessee, for the appellant, David Weatherspoon.

Christopher Vescovo and Jonathan Louis May, Memphis, Tennessee, for the appellee, Gayle Minard, M.D.

## OPINION

## Background

David Weatherspoon ("Appellant") brought this action against Gayle Minard, M.D. ("Dr. Minard" or "Appellee") alleging that her negligence led to the amputation of Appellant's leg in 1998. In some form or another, this case has been pending over fifteen years. Appellant originally filed this case against Dr. Minard and another defendant in 2000, voluntarily non-suited it in 2008, and then re-filed the case on January 6, 2009. The other defendant was subsequently dismissed, and Dr. Minard is currently the only remaining defendant.

In the re-filed case, Dr. Minard filed a motion for summary judgment on December 11, 2009 arguing that Appellant did not have an expert witness who could provide competent testimony that Dr. Minard deviated from the standard of care. On February 22, 2010, Appellant provided the affidavit of Dr. Martin Evans and responded to the motion for summary judgment relying on the affidavit. Plaintiff also filed a motion for partial summary judgment. On October 28, 2011, the trial court heard the cross-motions and denied both, noting that Dr. Evans's affidavit rendered Dr. Minard's argument moot.

Pursuant to a scheduling order entered April 25, 2013,[1] the deadline for the parties to disclose expert witnesses was December 17, 2012. The scheduling order provides:

> 1. [Appellant] shall identify any expert who may be called to testify at the trial of this cause and shall supplement expert interrogatories, if any, with respect to same on or before **December 17, 2012**. This designation shall be accompanied by supplemental interrogatory answers and/or expert witness disclosure information setting forth the information required by TRCP 26.02(4)(a)(i) and 26.05.
>
> 2. [Appellant] shall produce experts who may be used at the trial of this cause to defense counsel for discovery depositions by **May 31, 2013**.
>
> \* \* \*
>
> 5. All depositions, other than evidentiary depositions, shall be completed by **September 30, 2013.**
>
> 6. All evidentiary depositions shall be completed by 30 days before trial. . . .

[1] The scheduling order was amended at least one time during the proceedings. The initial scheduling order was entered September 28, 2012. However, the deadline to disclose experts remained December 17, 2012.

(Emphasis in original.) A jury trial was set for February 2, 2015.

On May 22, 2013, counsel for Dr. Minard filed and served on Appellant's counsel a notice to conduct a discovery deposition of Dr. Evans to occur May 29, 2013. The notice requested that Appellant ensure Dr. Evans produced certain documents at the deposition, including those related to the income he earned as an expert witness. The deposition occurred as scheduled; however, Dr. Evans failed to produce the requested financial documents. According to Dr. Minard, Dr. Evans testified that the requested information was "available and easily obtainable," but refused to produce it.

Eventually, after over a year of quibbling between the parties, on November 25, 2014, Dr. Minard filed a subpoena *duces tecum* seeking to compel certain financial documents from Dr. Evans that he had not produced at his deposition. Appellant opposed the subpoena. The trial court conducted a hearing on December 12, 2014. At the conclusion of the hearing, the trial court granted Dr. Minard's motion, and on December 17, 2014, the trial court issued the commission of the subpoena, compelling Dr. Evans to appear at his office located in Virginia and produce the requested documents on January 13, 2015.

On January 5, 2015, Appellant filed a motion for protective order seeking to quash the subpoena. On January 13, 2015, counsel for Dr. Minard appeared at Dr. Evans's office, but his office administrator informed counsel that he was not present and that counsel did not have permission to be on the property. Dr. Minard opposed the motion to quash by response filed January 14, 2015.

On January 16, 2015, the trial court conducted a hearing on the motion to quash the subpoena. Counsel for Appellant argued that Dr. Minard's subpoena was untimely and should have been filed earlier, especially in light of the upcoming trial date. Further, counsel for Appellant stated: "With regard to whether [the subpoena is] untimely, from October, like he said, it's a 17-year-old case, how long has [counsel for Dr. Minard] been trying to get this all [sic] important information about Dr. Evans, who is the only expert, the plaintiff's expert in the case . . . ." On January 23, 2015, the trial court denied Appellant's motion to quash the subpoena.

Also on January 16, 2015, Dr. Minard filed a motion *in limine* to exclude Dr. Evans based on his non-compliance with the trial court's order to produce the requested financial documents. Dr. Minard argued that Dr. Evans should not be permitted to testify because he has refused to provide the documents since she first requested them before his May 2013 deposition. Appellant responded to the motion *in limine* on January 26, 2015. He argued that Dr. Evans rightfully refused to comply with the subpoena because it requested information that "defendant had no right to [obtain]." Appellant also asserted that Dr. Minard's attempt to

3

subpoena the documents was an untimely attempt to procure them and that she had "been anything but diligent" in her attempts.

On January 28, 2015, the trial court heard arguments from the parties regarding the motion *in limine*, and on February 10, 2015, entered an order excluding Dr. Evans. The trial court's order states that it found the facts of the instant case "virtually identical" to those presented in ***Laseter v. Herrera***, W2013-02105-COA-R3-CV, 2014 WL 3698248 (Tenn. Ct. App. July 24, 2014), *perm. app. denied* (Tenn. Dec. 18, 2014), which held that the exclusion of Dr. Evans (the same expert in this case) was proper where Dr. Evans failed to disclose similar financial documents. Notably, counsel for Appellant represented the plaintiff in ***Laseter***. The trial court noted that Appellant had known since the filing of ***Laseter*** that Dr. Evans's refusal to produce such documents was likely to result in his exclusion. Accordingly, the trial court excluded Dr. Evans and dismissed the case with prejudice. At some point during the hearings on the aforementioned motions, Appellant orally sought a continuance of the trial date in order to obtain another standard-of-care expert. The trial court's order also addressed this request, denying the request and stating that another continuance would prejudice Dr. Minard.

On March 11, 2015, Appellant subsequently filed a motion to alter the trial court's order dismissing the case, which Dr. Minard opposed via written response filed April 16, 2015. In his motion, Appellant pointed out that the trial court's previous order referenced a motion for summary judgment that defense counsel represented to the trial court as still pending, despite it being ruled upon several years prior. With this information, the trial court denied Appellant's motion in part and granted it in part by written order entered May 13, 2015. Specifically, the trial court agreed that it erroneously noted in its previous order that it was decided upon a pending motion for summary judgment. However, the trial court declined to alter its ruling pertaining to the exclusion of Dr. Evans and the subsequent dismissal of the case with prejudice.

## Issue

As we perceive it, this appeal presents two issues for our review, as summarized from the issues presented in Appellant's brief:

> 1. Whether the trial court erred when it dismissed Appellant's suit after excluding his expert standard-of-care witness without permitting Appellant additional time to "emergently arrange[]" for another expert to testify at trial, which was scheduled to begin five days later.

4

2. Whether the trial court erred in granting in part and denying in part Appellant's motion to alter or amend the trial court's decision to dismiss his lawsuit.

## Analysis

Before addressing the substance of Appellant's issue, it is helpful to clarify what is **not** at issue in this appeal. To begin, Appellant does not appeal the trial court's exclusion of Dr. Evans as his standard-of-care expert based on Dr. Evans's failure to produce certain financial information. *See Laseter v. Herrera*, W2013-02105-COA-R3-CV, 2014 WL 3698248 (Tenn. Ct. App. July 24, 2014), *perm. app. denied* (Tenn. Dec. 18, 2014) (upholding the exclusion of Dr. Evans on the same ground as at issue in this case). Additionally, Appellant does not appeal the trial court's denial of a continuance of the scheduled trial date.[2] Thus, the only issue before this Court is whether it was an abuse of discretion for the trial court to dismiss Appellant's complaint without allowing Appellant permission to, in the five days before trial, arrange for another standard-of-care expert to testify at trial. *See Robinson v. LeCorps*, 83 S.W.3d 718, 720, 725 (Tenn. 2002).

As discussed briefly above, the trial court's order includes several reasons for denying Appellant another opportunity to arrange for a standard-of-care expert and ultimately dismissing the case. Specifically, the trial court found that counsel for Appellant

> has known for quite some time, and certainly since the *Laseter* decision was released on July 24, 2014, that Dr. Evans would not be allowed to testify without producing the requested [financial information], and further that Dr. Evans would recuse himself before complying with any order to produce such information and documents. Nonetheless, [Appellant] failed to seek timely leave of the Court to obtain and identify a new expert.

The trial court also ruled that, without the financial information that Dr. Evans "abjectly refused" to provide, Dr. Minard would be prejudiced because she would not able to sufficiently cross-examine the expert at trial. Last, the trial court concluded that counsel for Appellant had known for at least several months that Dr. Evans would not be permitted to testify without producing the requested information, but that counsel failed throughout the proceedings to provide any indication that he had obtained another standard-of-care expert to replace Dr. Evans.

---

[2] Appellant's motion for a continuance was oral before the trial court, not written, and counsel for Appellant conceded during oral argument to this Court that he was not appealing its denial.

5

With regard to claims brought pursuant to the Tennessee Health Care Liability Act ("HCLA"), the plaintiff bears the burden of proving each of the elements set forth in Tennessee Code Annotated Section 29-26-115(a). Specifically, Section 29-26-115(a) requires the plaintiff to show:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Further, the HCLA requires that the plaintiff prove the aforementioned elements through expert testimony. *Id.* at (b). When a plaintiff fails to produce expert testimony comporting with Section -115, he fails to state a health care liability claim pursuant to the HCLA. *See* **Robinson**, 83 S.W.3d at 725 (referring to Section 29-26-115 as the "required elements of a [health care liability action]").

When a complaint fails to state a claim upon which relief may be granted, a trial court has the authority to dismiss a complaint *sua sponte*. **Huckeby v. Spangler**, 521 S.W.2d 568, 571 (Tenn. 1975). Indeed, it is well-settled that Tennessee courts are afforded broad inherent authority over their court proceedings. *See* **Hodges v. Attorney Gen.**, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). According to the Tennessee Supreme Court, "a trial court may under certain circumstances and upon adequate grounds therefor[e], *sua sponte* order the involuntary dismissal of an action." **Harris v. Baptist Mem'l Hosp.**, 574 S.W.2d 730, 731 (Tenn. 1978). However, trial courts must exercise this authority sparingly so that the rights of the parties are not denied or otherwise impaired. *Id.* Such a dismissal is reviewed by this Court under an abuse-of-discretion standard. *See* **Robinson**, 83 S.W.3d at 720, 725. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that causes an injustice to the party complaining. **Johnson v. Richardson**, 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001)). Applying this standard, we will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. **Eldridge**, 42 S.W.3d at 85.

6

The case of **Robinson v. Lecorps**, 83 S.W.3d 718 (Tenn. 2002), offers guidance concerning whether a trial court abuses its discretion in situations where it excludes the plaintiff's standard-of-care expert in a health care liability action, and consequently, dismisses the case. In **Robinson,** the trial court granted the defendant's motion to exclude the plaintiff's medical expert after finding his testimony was based on an incorrect standard of care pursuant to Tennessee Code Annotated Section 29-26-115(a)(1). *Id.* at 722 (excluding the expert's testimony after concluding that he failed to satisfy the requirements of the locality rule). Because the plaintiff had no other expert to testify as to the standard of care, the trial court *sua sponte* dismissed the plaintiff's entire action for failure to a state a claim. After affirming the exclusion of plaintiff's expert on appeal, the Tennessee Supreme Court also affirmed the dismissal of plaintiff's complaint, focusing on the plaintiff's awareness of the impending exclusion and his lack of effort to remedy any issue regarding his expert's testimony. *Id.* at 725. The Supreme Court opined:

> [The plaintiff] was aware of the required elements of a malpractice action under Tenn. Code Ann. § 29-26-115(a) and (b) and also knew that the defendant objected to the testimony of Dr. Kennedy with regard to the standard of professional care in a discovery deposition. Moreover, counsel for [the defendant doctor] objected and cited this specific ground on two occasions during the evidentiary deposition of Dr. Kennedy. Despite these specific objections, [the plaintiff] did not [remedy the issue with Dr. Kennedy's testimony] and did not present any other expert witnesses to establish an appropriate standard. In addition, [the plaintiff] made no showing of how Dr. Kennedy's new testimony would [remedy the issues that led to the exclusion of Dr. Kennedy's testimony].

*Id.* Thus, the Tennessee Supreme Court held that a party faced with a motion to exclude his or her required standard-of-care expert may be required to anticipate the exclusion of the expert and make appropriate efforts to remedy the issues that led to the expert's exclusion or present to the court "[an]other expert witnesses to establish an appropriate standard." *Id.*

In our review, the **Robinson** case is highly analogous to the case-at-bar. At the January 28, 2015 hearing in which the trial court orally ruled on Dr. Evans' exclusion, Appellant asked to be given time, "no matter how short it is," to obtain another expert witness to show a breach of the standard of care as required by Tennessee Code Annotated Section 29-26-115(a). By the January 2015 hearing date, however, Appellant, like the plaintiff in **Robinson**, was certainly on notice that Dr. Evans was likely to be excluded. Indeed, the only notice provided to the plaintiff in **Robinson** was the motion to exclude the expert and two objections to his testimony. Instead, in this case, Appellant was certainly aware as of July

7

2014 that this Court had ruled in a separate case that the trial court could exclude Dr. Evans on exactly the same ground as at issue here. *See Laseter*, No. W2013-02105-COA-R3-CV, 2014 WL 3698248 (Tenn. Ct. App. July 24, 2014), *perm. app. denied* (Tenn. Dec. 18, 2014). As noted above, counsel for Appellant also represented the plaintiff in *Laseter*, and thus, had knowledge of both the concerns surrounding Dr. Evans's ability to testify, as well as the trial court and appellate court decisions in *Laseter*. Moreover, because the Tennessee Supreme Court denied permission to appeal in *Laseter* in December 2014, the fact of Dr. Evans's ultimate exclusion in this case was more than a mere likelihood for over a month prior to the January 2015 hearing date.[3]

Despite the clear notice that Dr. Evans was likely to be excluded well before the January 2015 hearing, Appellant did not present to the trial court any expert that could be called in place of Dr. Evans. *See Robinson*, 83 S.W.3d at 725 (affirming the dismissal because the plaintiff "did not present any other expert witnesses to establish an appropriate standard" at the time the case was dismissed). Instead, merely five days before trial the Appellant requested time to obtain another expert and faults the trial court for failing to make an "inquiry into Plaintiff's ability to accomplish [the arrangement of another expert]." Appellant also contends that the trial court failed to "make a bona fide finding that Plaintiff would not be able to" "emergently arrange" for another expert. Respectfully, it is not the obligation of the trial court to prepare Appellant's case for him. The statutes in the HCLA are abundantly clear that, "[i]n a health care liability action, the claimant shall have the burden of proving by evidence" the requisite elements. Tenn. Code Ann. § 29-26-115(a). Other than the several vague requests for leave to "find another expert witness," counsel for Appellant otherwise made no effort to remedy his predicament before or after Dr. Evans's anticipated exclusion, contrary to the unambiguous holding in *Robinson*. Based upon the clear notice of the impending exclusion of Dr. Evans and the overall duration of this case, Appellant's assertion that he could obtain another expert if simply given a little more time is "too little, too late." *See Fritz v. CVS Corp.*, No. E2012-01775-COA-R3-CV, 2013 WL 5406871, at *5 (Tenn. Ct. App. Sept. 24, 2013) (concluding that plaintiff's attempt to disclose an expert two months after his case had been dismissed for failure to disclose an expert was "too little, too late"). Indeed, at the hearing, the trial court stated:

---

[3] At some point during the proceedings before the trial court in this case, Dr. Evans allegedly indicated he would never serve as an expert witness in Tennessee due to this Court's decision in *Laseter*. Still, even after the Supreme Court denied permission to appeal in *Laseter*, there is no indication that Appellant considered developing another standard-of-care expert until his request to do so after the trial court excluded Dr. Evans in its oral ruling on January 28, 2015.

The record also suggests that Dr. Evans had been excluded by at least one other Tennessee trial court for failure to provide certain financial documents, although the record does not include the style or docket number of that case.

Well, the reality here is that the proverbial writing has been on this wall for a long, long, long time. [Counselor], if you were able to stand and say, well, we've communicated with another expert, we believe we have someone ready to go forward, I might be more sympathetic, but in a situation where---such as this, this case has been ongoing now, what, since 1998 . . . . And the opportunity to [secure another expert] has been abundant, especially with the *Laseter* case pending on appeal with the decision coming down in July of last year. . . .

We are cognizant of the slight factual difference between the case-at-bar and *Robinson* concerning the number of standard-of-care experts disclosed. First, the plaintiff in *Robinson* disclosed only one expert, Dr. Kennedy. In this case, however, the record indicates that Appellant did disclose several standard-of-care experts in his required disclosures filed on December 17, 2012. After a review of the record, the only conclusion we can draw is that Appellant had abandoned any intent to rely upon these experts at trial. Appellant concedes in his brief to this Court that, although Appellant initially disclosed several experts, he "made a decision to proceed in this case with a different expert," referring to Dr. Evans. Notably, counsel for Appellant had referred to Dr. Evans as Appellant's sole expert witness concerning the standard of care in this case.[4] Moreover, at the January 2015 hearing, Appellant failed to offer the name of a single expert that could take Dr. Evans's place, previously disclosed or otherwise. Thus, the record and the parties' briefs are clear that Appellant had chosen not to pursue these experts and instead develop Dr. Evans as the sole standard-of-care expert. In our review, and as apparently correctly assumed by the trial court, at the time of the hearing on Dr. Minard's motion to exclude, Dr. Evans was the only prepared and available expert standard-of-care witness that Appellant had. The trial court did not abuse its discretion in failing to provide Appellant yet another opportunity to prepare his case for trial when he waited until five days before trial to assert that the trial court should wait to see if he would be able to "emergently arrange" for a another expert to appear at trial.

Furthermore, while the plaintiff in *Robinson* only requested additional time to rehabilitate his previously disclosed and deposed expert witness, here, Appellant apparently wanted to obtain an entirely new expert witness. If the trial court had granted Appellant's request, it would have been forced to either delay trial or require Dr. Minard to immediately proceed to trial against an expert witness that she was not given sufficient time to investigate

---

[4] Appellant argues that Dr. Minard's reference to this statement took the statement out of context. After a review of the entire transcript and the record in this case, we find this assertion inaccurate. Further, Appellant's own brief indicates that he abandoned the other disclosed experts. This interpretation is buttressed by the fact that, throughout the proceedings, Appellant was never able or willing to offer the name of any other expert he could have proceeded with.

or depose. We must remain cognizant that the trial court's authority to dismiss a case also exists to "protect defendants against plaintiffs who are unwilling to put their claims to the test, but determined to subject [defendants] to the continuing threat of an eventual judgment." *Osagie*, 91 S.W.3d at 329. Here, considering the peculiar history of this litigation, to permit Appellant to attempt to employ another expert in the days before trial would be inconsistent with this principle. The record is devoid of any indication that another expert, whether previously identified or not, had been developed to the point that Dr. Minard could be adequately prepared to question or refute his or her testimony. To require Dr. Minard to develop a strategy to defend against a new standard-of-care expert five days before trial would be extremely prejudicial. Accordingly, we conclude that the trial court did not abuse its discretion in dismissing the case at that point, rather than permitting Appellant to "emergently arrange" for another expert to testify at trial.

Regarding Appellant's second issue pertaining to the motion to alter or amend, we are perplexed as to Appellant's dissatisfaction with the trial court's ruling, as it was Appellant that called the improper reference to summary judgment in the dismissal order to the trial court's attention in his motion to alter or amend. Regardless, Appellant states that the trial court erred when it upheld its dismissal and merely omitted the provision stating it was granting summary judgment. We have previously held that the trial court did not abuse its discretion in dismissing Appellant's complaint, even *sua sponte*. Thus, it appears abundantly clear from the record that any reference to summary judgment was merely a clerical error of the type that Rules 59 and 60 of the Tennessee Rules of Civil Procedure were designed to correct. *See* Tenn. R. Civ. P. 59.04 (allowing a party to file a motion to alter or amend a judgment before it becomes final); Tenn. R. Civ. P. 59.05 (allowing the trial court to, *sua sponte*, correct a judgment, within thirty days of its entry); Tenn. R. Civ. P. 60.01 ("Clerical mistakes in judgment, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party . . . ."). Accordingly, the trial court did not abuse its discretion by omitting the reference to summary judgment especially where the ruling clearly was premised not on summary judgment principles, but on Dr. Evans's failure to comply with the court's orders. *See Wilson v. Schwind*, 260 S.W.3d 454, 457–58 (Tenn. Ct. App. 2007) ("[T]he trial judge is in the best position to interpret [its] own orders.") (citation omitted); *Jackman v. Jackman*, 373 S.W.3d 535 (Tenn. Ct. App. 2011) ("We are 'even further removed from the events surrounding the [final] order than is the trial court, and we would be reluctant to say that the judge's order means something different from what [she] says it means.'") (quoting *Richardson v. Richardson*, 969 S.W.2d 931, 935 (Tenn. Ct. App. 1997)).

Appellant also argues that the trial court erred in denying his other requests for relief in his motion to alter or amend. "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the

10

judgment becomes final." ***In re M.L.D.***, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." ***Id.*** We find no indication in the record that any of the foregoing requirements for a motion to alter or amend have been fulfilled. Accordingly, it was not error for the trial court to deny Appellant's request to alter or amend the dismissal of his lawsuit.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed. This cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant David Weatherspoon, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE